1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9    Maria D. Robles,                    )     No. Civ. 04-2882-PHX-MS
                                          )
10                 Plaintiff,             )     **ORDER**
                                          )
11   vs.                                  )
                                          )
12                                        )
     JoAnne Barnhart, Commissioner of     )
13   the Social Security Administration,  )
                                          )
14                 Defendant.             )
                                          )
15   _____)

16

17          This social security disability benefits case comes before the Court on

18   Plaintiff's Motion for Summary Judgment[1] [Doc. 13] and Defendant's Motion for

19   Remand [Doc. 21].  The Court now remands this matter for further proceedings.

20   **I. Procedural Background**

21          Plaintiff applied for Disability Insurance Benefits and Supplemental Security

22   Income benefits in March, 2002, alleging a disability onset date of November, 2001.

23   [Doc. 14 at 1; Doc. 6A at 58, 293].   Her claims were denied initially and on

24   reconsideration. [Doc. 14 at 2]. Plaintiff obtained a hearing before an Administrative

25

26   _____
     [1]    The full title of Plaintiff's motion is Motion for Summary Judgment on
27   Complaint for Judicial Review of Administrative Determination of Claims
     for a Period of Disability, Disability Insurance Benefits, and
28   Supplemental Security Income Based on Disability.  [Doc.13].

1  Law Judge ("ALJ"), who issued an unfavorable decision on October 31, 2003. [Doc.
2  14 at 2; Doc. 6A at 15-25].  On October 15, 2004, the Appeals Council denied
3  Plaintiff's request for review, and the ALJ's decision became the final decision of the
4  Social Security Commissioner for purposes of judicial review.  [Doc. 14 at 5; Doc. 6A
5  at 8-10].

6      Plaintiff filed a Complaint in this Court on December 14, 2004  [Doc. 1], and
7  a Motion for Summary Judgment on June 13, 2005.  [Doc. 13].  Defendant opposed
8  the motion and filed a Motion for Remand on September 7, 2005.  [Doc. 21].

9  **II. Legal Framework**

10     **A. Standard of Review**

11     Because the Social Security Act confines the scope of judicial review to
12  evidence within the administrative record, the Court will treat Plaintiff's Motion for
13  Summary Judgment as a motion for reversal of the Commissioner's decision.  42
14  U.S.C. § 405(g); Higgins v. Shalala, 876 F. Supp. 1224, 1226 (D. Utah
15  1994)(collecting cases and discussing the appropriate treatment of summary
16  judgment motions requesting review of administrative decisions).  The appropriate
17  standard of review is whether the ALJ's findings of fact are supported by substantial
18  evidence and whether the denial of benefits was free from legal error.  Smolen v.
19  Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Flaten v. Sec'y of Health & Human
20  Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).  Substantial evidence is "relevant
21  evidence as a reasonable mind might accept as adequate to support a conclusion."
22  Smolen, 80 F.3d at 1279 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971));
23  accord Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  To determine
24  whether substantial evidence exists to support an administrative decision, the Court
25  must "review the administrative record as a whole, weighing both the evidence that
26  supports and detracts from the [ALJ]'s conclusion."  Magallanes, 881 F.2d at 750.
27     If the evidence can support either affirming or reversing the ALJ's decision, the
28  Court must uphold the decision.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir.

1    1995).    However, reviewing courts cannot accept post hoc rationalizations for

2    agency action.  See, e.g., NLRB v. Metro. Life Ins. Co., 380 U.S. 438, 444 (1965);

3    Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001).  Thus, the ALJ's decision must

4    be upheld, if at all, on the grounds articulated in the order by the ALJ.  Pinto, 249

5    F.3d at 847.

6             **B. Regulatory Disability Standards**

7             To qualify for disability benefits under the Social Security Act, a claimant must

8    show that: (1) she suffers from a medically determinable physical or mental

9    impairment that can be expected to result in death or that has lasted or can be

10   expected to last for a continuous period of not less than twelve months; and (2) the

11   impairment renders the claimant incapable of performing work previously performed

12   and incapable of performing any other substantial gainful employment that exists in

13   the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A); Tackett v. Apfel, 180

14   F.3d 1094, 1098 (9th Cir. 1999).  The Social Security Regulations set forth a five-step

15   sequential process for evaluating disability claims.  See 20 C.F.R. § 404.1520.  A

16   claimant's claim of disability can be rejected at any stage of the sequential process.

17   Id.; § 404.1520.  The claimant bears the burden of proof at steps one through four

18   of the sequential process.  42 U.S.C. § 423(d)(5); Reddick v. Chater, 157 F.3d 715,

19   721 (9th Cir. 1998).  The burden shifts to the Commissioner at step five.  Reddick,

20   157 F.3d at 721.

21           At step one of the sequential process, the ALJ determines whether the

22   claimant is currently engaged in substantial gainful activity.  Tackett, 180 F.3d at

23   1098; § 404.1520(b).  At step two, the ALJ determines, based on the medical

24   evidence, whether the claimant has a "severe impairment." Id.; § 404.1520(c). If the

25   claimant's impairment is not severe, then the claimant will not be considered

26   disabled.    If the impairment is severe, the ALJ proceeds to step three and

27   determines whether the impairment meets or equals a specific impairment listed in

28   the regulations.  Id.; § 404.1520(d).  When the impairment "meets or equals" one of

1  the specified impairments, disability will be found.  When the impairment does not

2  meet or equal a specified impairment, the ALJ proceeds to step four and determines

3  whether the claimant can still perform "past relevant work." Id.; § 404.1520(e).  If the

4  claimant can perform such work, the claim is denied.  However, if the claimant is

5  unable to do past relevant work, the ALJ proceeds to the fifth step and determines,

6  based on the claimant's age, education, work experience and residual functional

7  capacity (RFC), whether the claimant can perform other work that exists in the

8  national economy.  Id.; § 404.1520(f).  If the claimant cannot, she is entitled to a

9  finding of disability.

10  **III. Discussion**

11      In this case, the ALJ considered whether Plaintiff was disabled based on her

12  allegations that: (1) her mental functioning ability was impaired, (2) she suffered

13  disabling effects from a gunshot wound to her left arm, or (3) she had depression,

14  anxiety, and an inability to read or write. [Doc. 6A at 19-23].  The ALJ found Plaintiff

15  not disabled at step four of the sequential evaluation process. [Doc. 6A at 24].  At

16  step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity

17  since her alleged onset date. [Doc. 6A at 19, 24].  At step two, the ALJ found that

18  Plaintiff had borderline intellectual functioning, an impairment that was severe within

19  the meaning of the guidelines.  [Id.].  However, the ALJ determined that Plaintiff's

20  alleged depression and arm injury did not amount to severe impairments. [Id. at 21,

21  23].  At step three, the ALJ determined that Plaintiff's severe impairments were not

22  severe enough to meet or medically equal one of the impairments specified in the

23  regulations.  [Id. at 23-24].  At step four, the ALJ determined that Plaintiff retained

24  the residual functional capacity to perform "simple, unskilled" work at any exertional

25  level.  He further determined that Plaintiff's reported limitations did not prevent her

26  from performing her past relevant work as a janitor, and that she was therefore not

27  disabled.  [Id. at 24].  Having found Plaintiff not disabled at step four of the

28  sequential evaluation process, the ALJ did not reach step five.

1    Plaintiff now contends that the ALJ erred in several ways.  First, Plaintiff
2  contends that the ALJ erred by finding that Plaintiff did not have a condition that met
3  or equaled the criteria for presumptive disability listed in the regulations.  [Doc. 15
4  at 3-9].  Specifically, Plaintiff contends that her condition satisfied the requirements
5  of section 12.05C of the Medical Listings, 20 C.F.R. Pt. 404, Subpt. P, App. 1 §
6  12.05C (2005) ("§ 12.05C"), which addresses mental retardation.  [Id.].  Second,
7  Plaintiff argues that the ALJ erred by globally assessing her residual functional
8  capacity rather than conducting a function-by-function assessment, as required by
9  Social Security Ruling 96-8p.  [Id. at 9-10].  Third, Plaintiff contends that the ALJ
10 erred by relying on the Dictionary of Occupational Titles (DOT) to conclude that she
11 could return to her past work as a janitor because the DOT description is
12 inconsistent with the RFC found by the ALJ.  [Id. at 10-11].  Finally, Plaintiff contends
13 that the ALJ erred by discrediting her testimony without clear and convincing
14 reasons.  [Id. at 11-15].

15    Defendant concedes that a remand of this matter is appropriate.  Defendant
16 contends, however, that further proceedings are required to fully assess Plaintiff's
17 impairments and determine whether she meets the requirements of § 12.05C.  [Doc.
18 22].   Defendant observes that many of Plaintiff's treatment records were not
19 submitted to the ALJ until after the hearing.  [Id.].  As a result, the consultative
20 examining psychologists and the medical expert did not have the benefit of
21 considering Plaintiff's treatment records.  [Id.].  Defendant maintains that the lack of
22 records resulted in less than full consideration of Plaintiff's limitations, as diagnosed
23 by her treating physician, and that a remand is therefore required.  [Id.].  To this end,
24 Defendant proposes that the Court direct the ALJ to do the following on remand:

25

26    1) obtain updated records from Plaintiff's medical and mental health care
   providers; 2) further evaluate the severity of Plaintiff's upper left extremity
27   carpel tunnel syndrome and consider the state agency physician opinions
   concerning Plaintiff's left hand limitations; (3) evaluate the severity of Plaintiff's
28   anxiety disorder; (4) apply the special technique set forth in 20 C.F.R. §§
   404.1520a and 416.920a for the evaluation of mental impairments; (5)

1   consider whether Plaintiff meets or equals Medical Listing 12.05C; and, (6)
    and [sic.] if appropriate, further evaluate Plaintiff's RFC.
2

3   [Doc. 22 at 9].  Defendant maintains that developing the record in this matter will

4   allow the ALJ, in his position as fact-finder, to better evaluate Plaintiff's impairments.

5   [Id. at 7].

6       Generally, when reversing an administrative determination, "the proper

7   course, except in rare circumstances, is to remand to the agency for additional

8   investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir.

9   2004)(quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)).   Remand for

10  further consideration is appropriate where issues are unresolved and enhancement

11  of the record is required.  Id.; Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003);

12  Harman v. Apfel, 211 F.3d 1172,1178-79 (9th Cir. 2000).  However, the Ninth Circuit

13  has recognized that it is both reasonable and desirable to require hearing officers to

14  articulate the grounds for discrediting  testimony in the original decision.  Harman,

15  211 F.3d at 1179.  Thus, improperly rejected evidence should be credited and an

16  award directed when:

17      (1) the ALJ has failed to provide legally sufficient reasons for rejecting
        such evidence, (2) there are no outstanding issues that must be
18      resolved before a determination of disability can be made, and (3) it is
        clear from the record that the ALJ would be required to find the claimant
19      disabled were such evidence credited.

20  Smolen, 80 F.3d at 1292.  See also Benecke, 379 F.3d at 593; Moisa v. Barnhart,

21  367 F.3d 882, 887 (9th Cir. 2004); Harman, 211 F.3d at 1178; Varney v. Sec'y of

22  Health & Human Servs., 859 F.2d 1396, 1401 (9th Cir. 1988).

23  **A. Section 12.05C**

24      A primary issue in this case is whether the record clearly establishes that

25  Plaintiff is entitled to a finding of disability because her impairments meet or equal

26  the requirements for disability listed in § 12.05C.  Section 12.05C provides:

27

28      12.05 Mental retardation: Mental retardation refers to significantly subaverage
        general intellectual functioning with deficits in adaptive functioning initially

- 6 -

1

manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

2

3

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

4

* * *

5

C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

6

7

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C (2005).

8

It is undisputed that Plaintiff's full scale IQ score, as reported by Drs. Henley

9

and Graff, falls within the 60 to 70 range.  It is further undisputed that the evidence

10

demonstrates an onset of Plaintiff's impairment before age 22.  The only issue to be

11

resolved under § 12.05C is whether Plaintiff suffered from physical or mental

12

impairments that imposed additional, significant, work-related limitations such that

13

she must be considered presumptively disabled at step three of the sequential

14

evaluation process.

15

As a preliminary matter, the Court rejects Plaintiff's argument that the ALJ

16

made only a boilerplate finding that Plaintiff's impairments did not meet or equal a

17

specified impairment.  When the ALJ's opinion is read in its entirety, it is evident that

18

the ALJ's extensive determinations relating to the severity of Plaintiff's impairments

19

at step two of the sequential evaluation process were also considered at step three

20

of the process.  [See Doc. 6A at 23] ("no treating or examining physician has

21

indicated findings that would satisfy the severity requirements of any listed

22

impairment").  The ALJ was not required to repeat his analysis under a "step three"

23

heading.

24

Plaintiff also alleges that the impairments suffered from the gunshot wound to

25

her arm and/or her mental disorders were significant enough to meet the "additional

26

and significant" limitation requirement of § 12.05C.  Implicit in Plaintiff's argument is

27

a contention that the ALJ erred in assessing the extent of Plaintiff's limitations. The

28

Court therefore turns to the ALJ's assessments to determine whether the ALJ erred,

1  and if so, whether the evidence of either impairment is sufficient to entitle Plaintiff to
2  a presumptive finding of disability.

3  **1. Plaintiff's Arm Injury**

4  At step two of the sequential evaluation process, the ALJ determined that
5  objective evidence did not support a finding that Plaintiff's left arm injury had more
6  than a "minimal effect on her ability to do work." [Id. at 21].  In reaching this
7  conclusion, the ALJ found Plaintiff's complaints to be less than fully credible, and
8  rejected the opinion of Dr. Drinkwater, a consultative examiner.  Plaintiff contends
9  that the ALJ improperly rejected both Dr. Drinkwater's assessment and her
10  complaints about her arm injury.  This Court will consider each contention in turn.

11  **(a).  Dr. Drinkwater's Report**

12  The ALJ rejected the opinion of Dr. Drinkwater, a consultative examiner.  Dr.
13  Drinkwater opined that: Plaintiff had median distribution neuropathy; was limited to
14  lifting and carrying ten pounds occasionally and less than ten pounds frequently; had
15  a limited ability to handle, finger, and feel with her left hand; and could only
16  occasionally climb, balance, stoop, kneel, crouch, and crawl. [Doc. 6A at 20, 199].
17  The ALJ determined that Dr. Drinkwater's opinion was inconsistent with the doctor's
18  evaluation as well as with the medical evidence as a whole. [Id. at 20-21]. The ALJ
19  concluded that Plaintiff was right-hand dominant and could use her left hand to
20  assist with lifting and carrying.   [Doc. 6A at 21].  He further found that the objective
21  medical evidence did not support Dr. Drinkwater's findings that Plaintiff had a limited
22  ability to climb, balance, stoop, kneel, crouch or crawl.  [Id.].

23  The ALJ is responsible for evaluating the opinions of each doctor, resolving
24  conflicts in the medical testimony, and resolving ambiguities. Morgan v. Social Sec.
25  Admin., 169 F.3d 595, 601 (9th Cir. 1999); Reddick, 157 F.3d at 722; Andrews v.
26  Shalala, 53 F.3d at 1035, 1039 (9th Cir. 1995).  The degree of weight given to a
27  particular physician's opinion depends on a variety of factors.  Among the relevant
28  factors to be considered are the relationship between the physician and patient, the

1   length and extent of treatment, the physician's specialty, and the support for the

2   physician's opinion in the medical record.   20 C.F.R. § 404.1527(d); see also

3   Andrews, 53 F.3d at 1035, 1041(discussing the weight to be given to different types

4   of physicians' opinions).  More weight is given to a treating physician's opinion than

5   to the opinion of a non-treating physician, and greater weight is accorded to the

6   opinion of an examining physician than to the opinion of a non-examining physician.

7   Andrews, 53 F.3d at 1040-41.  The ALJ may reject an uncontroverted opinion of a

8   treating physician only for clear and convincing reasons.  Id. at 1041; Magallanes,

9   881 F.2d at 751.  Similarly, "the Commissioner must provide 'clear and convincing'

10  reasons for rejecting the uncontradicted opinion of an examining physician." Lester

11  v. Chater, 81 F.3d 821, 830 (9th Cir. 1996)( as amended)(citing Pitzer v. Sullivan,

12  908 F.2d 502, 506 (9th Cir.1990)).  Further, "like the opinion of a treating doctor, the

13  opinion of an examining doctor, even if contradicted by another doctor, can only be

14  rejected for specific and legitimate reasons that are supported by substantial

15  evidence in the record." Id. at 830-831 (citing Andrews, 53 F.3d at 1043).

16       Here, Plaintiff and Defendant agree that the record does not support the ALJ's

17  rejection of Dr. Drinkwater's testimony.  Plaintiff posits that "the ALJ's rejection of

18  Drinkwater's assessment, based on the ALJ's opinion that Drinkwater's evaluation

19  showed 'minimal clinical abnormalities' was beyond the ALJ's ken."  [Doc. 15 at 7].

20  Defendant states that the medical evidence was insufficient to allow the ALJ to

21  "adequately evaluate the severity of Plaintiff's alleged physical impairment and its

22  functional effects."  [Doc. 22 at 4].

23       The Court agrees with the parties that the ALJ's reasons for rejecting Dr.

24  Drinkwater's opinion were insufficient.  In rejecting Dr. Drinkwater's opinion, the ALJ

25  stated that Dr. Drinkwater's assessment of Plaintiff's abilities was inconsistent with

26  his evaluation, "which showed minimal clinical abnormalities,"  [Doc. 6A at 20], and

27  that the objective medical evidence did not support the other limitations noted by Dr.

28  Drinkwater.  [Id.].  The ALJ did not, however, provide any explanation of how Dr.

1   Drinkwater's opinion was inconsistent with the medical evidence.  The ALJ must set

2   out in the record his reasoning and the evidentiary support for his interpretation of

3   the medical evidence.  See Tackett,  180 F.3d at 1102; see also Lester, 81 F.3d at

4   832 (ALJ may not reject treating and examining physicians' opinions based on

5   unsupported speculation).

6       The ALJ further stated that there was "no reason" to limit Plaintiff's ability to

7   lift and carry, and observed that "because the claimant is right-hand dominant, she

8   can use her left hand for assisting during lifting and carrying."  [Doc. 6A at 20-21].

9   By speculating that Plaintiff's right-hand dominance would allow her to perform more

10  activities than those observed by Dr. Drinkwater, without pointing to any medical

11  evidence, the ALJ effectively substituted his belief for the opinion of a medical

12  source.    Sheer disbelief in a doctor's opinion is no substitute for substantial

13  evidence.  Benecke,  379 F.3d at 594; see also Lester, 81 F.3d at 382.  For these

14  reasons, the Court agrees with the parties that the ALJ's opinion was not supported

15  by specific reasons or substantial evidence.

16      **(b). Plaintiff's Subjective Complaints**

17      The ALJ also found that Plaintiff was less than fully credible and may have

18  exaggerated her symptoms. It is within the province of the ALJ to make credibility

19  determinations.  To discredit a claimant's testimony, and ALJ must provide specific,

20  cogent reasons supported by substantial evidence. Reddick, 157 F.3d at 722.  The

21  ALJ may not reject a claimant's testimony without specifically identifying the portions

22  of the testimony found not credible and explaining what evidence contradicts or

23  undermines the testimony.  Aukland v. Massanari, 257 F.3d 1033, 1036 n.1 (9th Cir.

24  2001); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001); Reddick, 157 F.3d at

25  722.  An ALJ's credibility findings must be sufficiently specific to allow a reviewing

26  court to conclude that the hearing officer rejected the testimony on permissible

27  grounds rather than arbitrarily discrediting it.  Rollins, 261 F.3d at 856.  Where there

28  is no affirmative evidence of malingering, the ALJ's reasons for rejecting the

1   claimant's testimony must be clear and convincing.   Reddick, 157 F.3d at 722;

2   Lester, 81 F.3d at 834.

3        In determining whether allegations of pain support a claim of disability, the

4   ALJ may consider various factors, including: the claimant's daily activities,

5   effectiveness of pain medication, and relevant character evidence.   Bunnell v.

6   Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also 20 C.F.R. §§ 404.1529(c)(3),

7   416.929(c)(3)(listing similar factors considered by the ALJ in assessing a claimant's

8   credibility).   In addition, the ALJ must consider the claimant's work record,

9   observations of treating or examining physicians and other third parties, precipitating

10  and aggravating factors, and functional restrictions caused by the claimant's

11  symptoms.  Smolen, 80 F.3d at 1284 (citing SSR 88-13); Bunnell, 947 F.2d at 346.

12       Here, the ALJ observed that Plaintiff was shot in 2000, and progress notes

13  indicated that she reported pain and weakness in her arm in February of 2002.

14  [Doc. 6A at 20].   However, the ALJ found that Plaintiff's reported symptoms may

15  have been exaggerated and did not support a finding of disability.  The ALJ further

16  concluded that there was no objective evidence to support Plaintiff's complaints that

17  she had limited use of her left arm and hand.  [Id.].

18       The Court finds that the ALJ properly observed that Plaintiff's reports of arm

19  pain did not support a finding of disability.  In making this determination, the ALJ

20  specifically pointed to Plaintiff's statement that her pain was severe enough that she

21  had to "drink[] pain pills."  [Id.].  He contrasted this with her admission to Dr.

22  Drinkwater that her pain was relieved with over-the-counter medication and the fact

23  that she attended physical therapy only once.  [Id.].  He then concluded that

24  Plaintiff's complaints were inconsistent with a finding of disabling pain. [Id.]. He also

25  considered Plaintiff's ability to engage in activities of daily living, such as diapering

26  and feeding her child.   The ALJ acted within his powers in making these

27  determinations. See e.g., Bunnell, 947 F.2d at 346 (ALJ may consider effectiveness

28  of pain relief and inadequately explained failure to follow a course of prescribed

1   treatment as well as daily activities in assessing credibility); Tidwell v. Apfel, 161

2   F.3d 599, 602 (9th Cir. 1999)(citing claimant's assertion that her intermittent pain was

3   aided by use of non-prescription medication as clear and convincing reason

4   supporting the ALJ's credibility finding).[2]

5       In contrast, the ALJ's finding that Plaintiff's complaints about the limited use

6   of her left arm was unsupported by any objective medical findings lacks substantial

7   support.  As explained above, the ALJ failed to give proper weight to the opinions of

8   Dr. Drinkwater regarding Plaintiff's limited ability to use her left hand.  The ALJ also

9   improperly speculated that Plaintiff's right-hand dominance allowed her to perform

10  a wider range of activities than those recognized by the medical examiner.  The

11  ALJ's error regarding these issues permeated his assessment of Plaintiff's credibility,

12  as evidenced by his conclusion that there was no medical evidence to support her

13  claims.[3] Because the ALJ's reasoning was predicated on underlying error, his

14  determination that the Plaintiff's alleged limitations were totally unsupported by

15  objective findings was also in error.

---

17  [2]  Plaintiff argues that the ALJ's determination was in error, in part,
18      because Plaintiff did not allege that her arm pain was itself disabling.
        Instead, Plaintiff argues, her arm condition contributed to her overall
19      disability. [Doc. 13 at 13]. However, even accepting Plaintiff's argument
        that the ALJ's conclusion was an adverse credibility finding based on
20      a misconstruction of the issue presented, Plaintiff would  suffer no
        prejudice.  If Plaintiff's testimony were credited, the Court would be
21      required to accept Plaintiff's contention that Plaintiff suffered some arm
22      pain, even though the pain was not itself disabling.  The ALJ's opinion
        is consistent with this proposition.

23

24  [3]  The ALJ also alluded to the fact that Plaintiff reported being in
        "excellent health" in October of 2002.  This observation does not alter
25      the Court's conclusion.  See, e.g., Reddick, 157 F.3d at 724 (observing
        that a person overstating her ailments would be unlikely to advise her
26      doctors when she was feeling better); Holohan, 246 F.3d at 1205 (the
27      fact that a claimant  shows signs of improvement does not mean that
        the person's impairments no longer seriously affect her ability to
28      function in a workplace).

**(c). Remand**

Having found error, this Court must determine whether to remand for further consideration or for the award of benefits. McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002); Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). As noted above, a remand for an award of benefits is only appropriate if there are no outstanding issues to resolved, and the record clearly indicates that the ALJ would be required to find the claimant disabled were the rejected evidence credited. Smolen, 80 F.3d at 1292.

Although Dr. Drinkwater noted some limitations on the evaluation form assessing Plaintiff's abilities, these limitations do not clearly indicate that Plaintiff's arm injury caused significant work-related limitations. Additionally, although Dr. Drinkwater's report indicated that Plaintiff had an underlying impairment, he did not make any statements indicating that Plaintiff's limitations were significant. While it was improper for the ALJ to reject Dr. Drinkwater's opinion based on speculation that Plaintiff's ability to use her right hand allowed her to perform a wide range of activities, the Court believes further exploration of the question whether the limitations noted by Dr. Drinkwater impose significant limitations is required.

Additionally, the Court is unsatisfied that the portion of Plaintiff's testimony that was rejected by the ALJ as objectively unsupported clearly establishes disability. This is especially true in light of the ALJ's other supportable credibility findings. This issue is most appropriately considered on remand.

**2. Plaintiff's Mental Impairments**

The Court next considers whether the impairments Plaintiff suffered as a result of her mental condition were significant enough to meet the requirements of § 12.05C. In connection with assessing Plaintiff's abilities, the ALJ considered the opinions of consultative examiners Robert J. Henley, Ph.D., and Sandra Graff, Ed.D., as well as the opinion of Dr. Edward Jasinski, Ph.D., a medical expert who testified at the hearing. On June 11, 2002, Dr. Henley diagnosed Plaintiff as having:

1  a dysthymic disorder, borderline intellectual functioning, dependent personality traits,

2  hypertension (by claimant report), and history of a gunshot wound to the arm.  [Doc.

3  6A at 143].  He opined that she would be moderately limited in her ability to cope

4  with work stresses, be moderately impaired in job reliability, mildly impaired in

5  maintaining attention and concentration during the work day, and have a limited but

6  satisfactory ability to deal with co-workers and supervisors.  [Id. at 144].     Dr.

7  Jasinski opined that Plaintiff's limitations were not "significant" under § 12.05C, but

8  testified that Plaintiff's abilities were moderately impaired with respect to the areas

9  of social functioning, concentration, persistence and pace, and that her daily

10  activities were mildly impaired.  [Doc. 6A at 322-23].  Dr. Graff's assessment

11  revealed significant limitations.  She diagnosed Plaintiff as having: a recurrent and

12  severe depressive disorder ("rule out' psychotic features and posttraumatic stress

13  disorder), a reading disorder, a mathematics disorder, a disorder of written

14  expression, and mild mental retardation.  Dr. Graff opined that Plaintiff had markedly

15  limited abilities in an extensive number of areas related to her ability to perform

16  work-related tasks.  [Doc. 6A at 216].

17        Based on the opinion of Dr. Henley and the testimony of Dr. Jasinski, the ALJ

18  determined that Plaintiff had borderline intellectual functioning.  The ALJ relied on

19  Dr. Jasinski's testimony to conclude that Plaintiff had a depressive disorder not

20  otherwise stated.[4]   [Id.].  The ALJ concluded that Plaintiff's borderline intellectual

21  functioning was a severe impairment, but that her depression was not severe for a

22  period of twelve consecutive months.  In reaching these conclusions, the ALJ

23

24  [4]    The ALJ assigned less weight to the portion of Dr. Jasinski's opinion

25  relating to Plaintiff's ability to function in the workplace, ability to engage
   in daily activities ability to engage in social interactions, and the effects

26  of her impairments on her concentration, persistence and pace.  The

27  ALJ stated that this portion of Dr. Jasinski's opinion could not be
   afforded great weight because the doctors had not had an opportunity

28  to review certain treatment records.  [Doc. 6A at 22].

1    rejected the opinions of Dr. Graff, who diagnosed Plaintiff as being mildly mentally

2    retarded and as having a recurrent and severe depressive disorder. [Doc. 6A at 21-

3    23]. The ALJ observed that, due to depression, Plaintiff's functioning appeared to

4    be more impaired at the time she saw Dr. Graff than at the time she saw Dr. Henley.

5    [Id.]. However, the ALJ concluded that Dr. Graff's opinion was not supported by the

6    evidence as a whole. [Id.]. The ALJ further observed that, although Plaintiff had

7    significant depression in December of 2002, her depressive symptoms improved

8    with medication and therapy such that her symptoms were only "mild" by February

9    of 2002. [Id.].

10         Plaintiff now contends that a finding of disability should be directed because

11    the opinions of Drs. Graff and Henley, as well as Plaintiff's treatment records from

12    Southwest Behavioral Health Services, conclusively demonstrate that she suffered

13    significant work-related mental limitations. Plaintiff observes that each evaluator

14    found that she suffered more than minimal impairments. [Doc. 13 at 8 (citing Doc.

15    14 at ¶¶ 7,8,9)].

16         Plaintiff's argument is problematic for two reasons. First, Plaintiff's argument

17    fails to account for the ALJ's determination that, while Plaintiff suffered from severe

18    depression for at least some period of time, the record did not support a conclusion

19    that her depression lasted for a continuous period of at least twelve months.[5] The

20    ALJ acknowledged Dr. Graff's September 2002 assessment of recurrent and severe

21    depression. [Doc. 6A at 21-23]. The ALJ further observed that on, December 18,

22    2002, Plaintiff's treating doctor assigned her a Global Assessment Functioning

23

24    [5]    20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 A provides that: "[The

25         evaluation of disability on the basis of mental disorders requires

26         documentation of a medically determinable impairment(s),

27         consideration of the degree of limitation such impairment(s) may

28         impose on your ability to work, and consideration of whether these

        limitations have lasted or are expected to last for a continuous period

        of at least 12 months."

1   ("GAF") score of 50, which represents "serious" symptoms.  [Id. at 23].  The ALJ

2   found, however, that Plaintiff's treatment notes indicated significant improvement by

3   February of 2003 and that she continued to improve at least through July of 2003.

4   [Id. at 22-23].

5        The record supports the ALJ's determinations.  Between September of 2002

6   and July of 2003, Plaintiff's GAF score continued to improve.  [See Doc. 6A at 215,

7   226, 229, 234, 240, 255].  By July of 2003, she had a GAF score of 65, which

8   Plaintiff acknowledges represents mild symptomology.  [Doc. 6A at 226; Doc. 14 at

9   12].  Thus, even if Plaintiff's depression were dated from Dr. Graff's report in

10  September of 2002, her symptoms would have existed for less than a continuous

11  twelve month period.[6]  The ALJ's determination was proper.

12       Moreover, although it is true that doctors Henley, Graff, and Jasinski each

13  reported that Plaintiff suffered limitations that were at least moderate in severity,

14  Plaintiff does not distinguish between findings that may have been based on her IQ

15  level from findings that were related to her depression.  The distinction is significant

16  because §12.05C requires a showing that Plaintiff not only suffered impairments as

17  a result of her IQ, but also suffered an impairment imposing an *additional* and

18

19  [6]   The Court observes that Dr. Henley's opinion is dated June 11, 2002,
20        more than twelve months prior to the date Plaintiff's treating physician
          indicated that she had a GAF score of 65.  His opinion included a
21        diagnosis of dysthymic disorder, which is defined in the DSM IV as
          including "a chronically depressed mood that occurs for most of the day
22        more days than not for at least two years."  [Doc. 14 at 8].  Dr. Henley
          further observed that Plaintiff had a history of chronic depression.  He
23        stated in his assessment, however, that Plaintiff's depression was
          situational in nature and did "not preclude normal daily functioning."
24        [Doc. 6A at 142].  The Court is unpersuaded that Dr. Henley's opinion
          clearly establishes that Plaintiff's depression or dysthymic disorder
25        significantly limited her work-related abilities as of the date of the
          opinion.  Thus, even assuming Dr. Henley's assessment is sufficient to
26        raise a question about the extent of Plaintiff's depression, a remand for
          an award of benefits would not be warranted.  At a minimum, further
27
28        proceedings would be required.  See Smolen, 80 F.3d at 1292.

1   significant work-related limitation of function.  To the extent Plaintiff's limitations
2   resulted from her low IQ, they would not impose an additional limitation.

3          Notably, the ALJ did analyze Plaintiff's depression apart from her IQ,
4   observing that only Dr. Graff found Plaintiff's depression to be recurrent and severe.
5   The ALJ ultimately determined that Dr. Graff's assessment was outweighed by the
6   overall medical evidence.  He instead relied on the assessments of Drs. Henley and
7   Jasinski, which indicated that Plaintiff's depression had a lesser effect on Plaintiff's
8   ability to function.  The ALJ was entitled to resolve any conflict between opinions of
9   equal weight.  Morgan, 169 F.3d at 601 ("where medical reports are inconclusive,
10  questions of credibility and resolution of conflicts in the testimony are functions solely
11  of the Secretary"); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

12         Notwithstanding this determination, however, the Court finds that a remand
13  for further proceedings regarding Plaintiff's mental impairments is appropriate.  The
14  ALJ  summarized  Plaintiff's  allegations  of  mental  impairments  as  including
15  "depression, anxiety, and an ability to read or write."  [Doc. 6A at 21].  Yet, an
16  analysis of the effects of Plaintiff's anxiety on her ability to function is noticeably
17  absent from the ALJ's opinion.  As Defendant concedes, Plaintiff's anxiety order was
18  well documented in her treatment notes by Dr. Benton Press. [Doc. 22 at 6]. It is
19  unclear whether her anxiety would amount to a significant limitation on her work-
20  related abilities.    Additionally, Defendant concedes that because Drs. Henley,
21  Jasinski, and Graff did not have an opportunity to review Plaintiff's treatment
22  records, they did not have an opportunity to assess whether Dr. Press's diagnoses
23  of an anxiety disorder would affect Plaintiff's functional limitations.  The Court agrees
24  with Defendant that further assessment of the effects of Plaintiff's anxiety disorder
25  on her depression and functional abilities would be appropriate on remand.

26         **B. Plaintiff's Remaining Arguments**

27         Plaintiff additionally argues that the ALJ erred at step four of the sequential
28  evaluation process by: (1) conducting a global assessment of her residual functional

1   capacity rather than conducting a function-by-function assessment, and (2) relying

2   on the Dictionary of Occupational Titles (DOT)[7] to conclude that she could return to

3   her past work as a janitor.  [Id. at 9-11].  Although the Plaintiff's arguments are well-

4   taken, the ALJ's errors at steps two and three of the sequential evaluation process

5   vitiate the ALJ's step four analysis.  If the ALJ reaches step four on remand, it will

6   be necessary to re-assess Plaintiff's RFC and to determine whether she can perform

7   her past relevant work.

8       **C. Conclusion**

9       For the foregoing reasons, this matter will be remanded for further

10  proceedings.  On remand, the ALJ should determine whether Dr. Drinkwater's

11  findings, when credited, establish that Plaintiff's arm injury caused significant work-

12  related limitations as required under §12.05C.  Additionally, the ALJ should

13  reassess, in light of Dr. Drinkwater's evaluation, the portion of Plaintiff's testimony

14  relating to her arm injury that was rejected by the ALJ as unsupported by the

15  objective evidence.  With regard to Plaintiff's mental limitations, the ALJ should

16  consider whether Plaintiff's anxiety disorder, independently or in combination with

17  her other alleged impairments, amounts to a significant limitation on her work-related

18  abilities. Among the relevant issues to be considered is whether the moderate

19  limitations noted by the treating and evaluating doctors resulted from Plaintiff's

20  anxiety and or depression apart from the limitations resulting from her IQ.  In making

21  the aforementioned assessments, the ALJ should obtain additional medical records

22  and opinions as necessary.

23      If Plaintiff's mental or physical limitations are found to be additional and

24  significant work-related limitations, she must be awarded benefits.  Otherwise, the

25

26

27  [7] DICTIONARY OF OCCUPATIONAL TITLES (DOT)(United States Dept. of Labor,

28      4th Ed. 1991), *available at* www.oalj.dol.gov/libdot.htm

1  ALJ should continue with the sequential evaluation process, assessing the Plaintiff's
2  RFC in a manner consistent with this Court's findings.
3      **IT IS THEREFORE ORDERED granting in part and denying in part**
4  Plaintiff's Motion for Summary Judgment [Doc. 13];
5      **IT IS FURTHER ORDERED granting** Defendant's Motion for Remand [Doc.
6  21];
7      **IT IS FURTHER ORDERED remanding** this matter to the Social Security
8  Administration for further proceedings.
9      DATED this 12th day of December, 2005.

_____
Morton Sitver
United States Magistrate Judge